(C. D. 664)

CARADINE HAT CO. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 10, 1942)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon, Joseph A. Howard, Jr.*, and *Richard H. Welsh*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge:   The suits listed in schedule A, hereto attached and made a part hereof, were filed by the plaintiffs at St. Louis, San Francisco, and New Orleans seeking to recover certain sums of money alleged to have been illegally exacted as customs duties on imported hats.   Duty was levied on the hats at the rate of 25 per centum ad valorem, plus 25 cents per dozen, under the provisions of paragraph 1504 (b) (2) of the act of 1930.   The plaintiffs claim the same to be properly dutiable at only 25 per centum ad valorem under paragraph 1504 (b) (5) of the act of 1930, or at only 12½ per centum ad valorem under said paragraph by virtue of T. D. 48075, as hats known as harvest hats valued at less than $3 per dozen.

Exhibits 3, 4, and 5 were admitted in evidence as samples of the imported merchandise, and other exhibits were admitted in evidence as illustrative of the imported merchandise after further processing. The record in *International Hat Co.* v. *United States*, C. D. 454, was also admitted in evidence herein.   In addition to the above, seven witnesses testified for the plaintiffs and four for the defendant in this case.

The pertinent part of the paragraph under which the merchandise was classified reads as follows:

1504. (b) Hats, bonnets, and hoods, composed wholly or in chief value of * * * paper * * * whether wholly or partly manufactured:

  *   *   *   *   *   *   *

(2) not blocked or trimmed, if bleached, dyed, colored, or stained, 25 cents per dozen and 25 per centum ad valorem;

The plaintiffs claim the merchandise dutiable under subparagraph (5) of said paragraph, reading as follows:

(5) any of the foregoing known as harvest hats, valued at less than $3 per dozen, 25 per centum ad valorem.

Paragraph 1504 (b) (5), as amended by the said trade agreement, reads as follows:

Hats provided for in paragraph 1504, if known as harvest hats and valued at less than $3 per dozen, 12½% ad val.

It is to be noted that at no place in the above-quoted statutes is there any provision made for hats with a certain width brim.   Therefore, much of the testimony in this case has no bearing upon the real issue presented, to wit: Are the hats in question, irrespective of the width of the brim, known as harvest hats?   The brim on some of the hats in question appears to be as narrow as 2¼ inches, which is nar-

rower than had formerly been used on hats known as harvest hats, and narrower than some witnesses contended could be used on a hat known as a harvest hat, but this was explained by witness Pellegrino, as follows:

After the farm became motorized and cabs were put on the ploughs, tractors, combines, and so forth, the brims became smaller and smaller, due to the fact that getting in and out of the cab they would knock the large brims off of their heads by bumping them. They found no reason to have tremendously large brims, because they didn't need the sun protection as much as they formerly did. In trying to style our line, because we are trying to be progressive and we don't think that a farmer has to be symbolized as a sect or a cult, we, therefore, gave him city styles for 10 cents or 25 cents or 50 cents, whichever he wanted to pay. Therefore, the trend of harvest hats, we tried to synchronize it with the style in dress hats. Therefore, we made the brims as small as 2⅛ inch brims or 2¼ inch brims, and let the sales determine whether that was a style which should be in our line or not.

Other witnesses also testified to a similar state of facts.

During the testimony of witness Elishewitz the defendant offered and there was admitted in evidence illustrative exhibit F and witness Elishewitz testified definitely more than once that this hat was an 8-bu hat. It was, after considerable interrogation of the witness by the court, admitted as to style only, but the testimony that it was an 8-bu hat was never retracted by the witness. However, on rebuttal, counsel for the plaintiffs established by credible testimony · that it was only a 6-bu hat. When asked how the 6-bu compared in quality or value with an 8-bu hat, one witness stated:

It is finer in weave and is, depending upon the market, approximately a dollar to a dollar and a half a dozen more than 8-bu.

In hats that cost less than $3 per dozen a difference of a dollar to a dollar and a half per dozen would unquestionably have considerable bearing upon the quality of the hat. Moreover plaintiffs' witnesses frankly admitted that a 6-bu hat could be manufactured into a dress hat.

One of defendant's witnesses, when asked if illustrative exhibits C, D, and E were harvest hats or dress hats, stated: "I would consider it a low priced dress hat." However, this same witness, when asked as to the men's hats which he had observed, if it was not true that the finished brim widths on the 8-bu had ranged from 2⅜ to 2½ inches, he stated: "I cannot answer that."

The witnesses for the defendant testified to having sold hats the same, identical, or similar to illustrative exhibits B, C, D, and E to dress-hat manufacturers, but only one of these witnesses produced a hat in court from which the court could determine whether such hats were the same, identical, or similar to the said exhibits. The one such hat produced was admitted in evidence as illustrative exhibit F, and it developed that it was of finer weave and cost from a dollar to a dollar and a half more than the imported 8-bu hats.

Witness Ostolaza testified that according to his business experience, the general range in price which he had paid for 8-bu paper Toyo or Formosa hats, during the past 12 years, "Quoting from memory, I would say the lowest price is 60 cents and the highest $1.25 a dozen," but admitted that he had paid as high as a dollar to a dollar and a half.

According to the evidence in this case two of the distinguishing features of a hat known as a harvest hat is coarseness of material and cheapness in price, and it is in effect agreed by all the witnesses who testified that an 8-bu hat is the coarsest and cheapest paper hat on the market.

We have in the record before us the testimony of nine witnesses who stated positively that the paper hats invoiced as 8-bu, to which item the claim in these suits has been limited, were hats known as harvest hats. Witness Sears testified for the defendant that he had sold hats made of a body like illustrative exhibits C, D, and E as a dress hat, but he produced no sample for comparison. The testimony of the other three witnesses who testified for the defendant was not materially different from that given by witness Sears, except that witness Elishewitz produced a sample which he testified was identical or similar to the merchandise in question, which has already been referred to.

No useful purpose would appear to be served by a further discussion of the evidence herein, the weight of which clearly shows that the paper hats invoiced as 8-bu are such hats as are known as harvest hats. The evidence also shows that all such hats are valued at less than $3 per dozen.

We, therefore, hold the merchandise invoiced as "8-bu," with or without other qualifying words or numerals, to be properly dutiable, that which was imported prior to February 1, 1936, at the rate of 25 per centum ad valorem under paragraph 1504 (b) (5) of the act of 1930, and that imported subsequent to February 1, 1936, at the rate of 12½ per centum ad valorem under said paragraph 1504 (b) (5) by virtue of T. D. 48075, as claimed by the plaintiffs.

To the extent indicated the specified claims in the suits listed in said schedule A are sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.